## PARK v. TOWNE.

In an action by a real estate broker against another broker for commission on a sale of land, the fact that defendant was not the grantor named in the deed, and was obligated to share profits with a local broker with whom he was operating, was wholly immaterial.

Where a real estate broker agreed to pay another broker a commission of a specified amount an acre for land disposed of to a certain purchaser, and it was understood that the purchaser's financial condition was such that to effect a sale of the land a house and lot owned by the purchaser must be taken in part payment, and the house and lot were received in partial consideration for the land sold and the

balance secured by a mortgage on the land, there is no merit in .the contention that a commission could ·not be recovered because the transaction amounted to an exchange of property, and not a sale.

In an action by one real estate broker against another· broker for commission on a sale of land, evidence as to what was said by, or in the presence of, an agent of plaintiff after plantiff and defendant had agreed that defendant would pay plaintiff a commission of a specified amount an· acre for land disposed of to a certain purchaser if plaintiff would permit such purchaser to accompany defendant·to see the land, and the purchaser had so accompanied defendant, was immaterial and properly excluded.

(Opinion filed, June 24, 1908.)

Appeal from Circuit Court, Davison County. Hon. FRANK B. SMITH, Judge.

Action by Frank Park against N. C. Towne. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

*Preston* & *Hannett,* for appellant. *C. C. Caldwell* and *A. E. Chamberlain,* for respondent.

FULLER, J. At the trial of this action between two real estate brokers, the jury found that respondent had procured a purchaser of 320 acres of Aurora county land pursuant to an express agreement with appellant to pay him therefor a commission of $800, and this appeal is from a judgment for that amount, exclusive of interest and costs, and from an order overruling a motion for a new trial.

Appellant was a resident of Iowa and respondent a resident of Illinois, and both were engaged in bringing prospective purchasers into different parts of this state for the purpose of making investments in land. They had been acquainted for some time, but had never transacted any business together until the 20th day of December, 1905, when they met on a train coming into this state. Respondent was accompanied by George Hubbard, one of the several agents in his employ, and also had with him Mr. Johnson and Mr. Jackson, both of whom he had brought from Illinois for the purpose of selling them some Miner county land in the vicinity of Junius, and they were on their way to examine it. Concerning what occurred between the parties, we quote from the testimony of respondent as follows: "I met Towne on the train between

Mannilla and Canton, S. D. He told me he was going to Plankinton, and we would part at Canton, he on his way to Plankinton and I on to Howard. That day I had conversation with Towne. I had these men with me. Towne asked me where I was going, and I told him, and he asked me what my deal was and I told him. He asked me if I thought I would make it, and I told him I was afraid it wouldnt go through, because the land didn't look like I would like to have it. After a while he said: 'I think I can make that deal for you, if your men would reconsider and come to Plankinton. I says: 'We will go there, if it will be all right, with the buyers.' So I talked with the buyers, and Towne wanted to know what I was going to get. * * * I told him I expected two and a half an acre out of the land deal as commission at Junius. If I made the deal at Junius, I expected two and a half an acre. Mr. Towne said: 'I will pay you the same if you want to let the men come on to Plankinton. Towne had not met Mr. Hubbard or Mr. Johnson at that time. They met there on the train. I introduced them. Mr. Hubbard and Mr. Johnson went with Mr. Towne from Canton. It was with my consent they went, and I advised them to go. I have talked a few times with Mr. Towne about the matter since. He said he made the deal all right. Mr. Towne has never paid me anything for commission in this deal. Mr. Towne was not acquainted with Mr. Hubbard and Mr. Johnson until I introduced them on the train that day. I said in my examination awhile ago that I said to Towne that I was afraid I wouldn't make the deal. I had reference to this land between Howard and Junius.'' It was sufficiently established at the trial that through the instrumentality of respondent and his agent appellant sold Mr. Johnson a 320-acre tract near Plankinton for $10,400, taking in partial settlement a house and lot in Galesburg, Ill., and a mortgage on the premises to secure deferred payments.

The fact that appellant was not the grantor named in the deed and was obligated to share profits with a local dealer with whom he was operating at the time was in no manner material to the issues raised by the pleadings. Nor is there any merit in the contention that respondent is entitled to no commission because the transaction amounted to an exchange of property within the mean-

ing of the recent South Dakota case of Steere & Ballah v. Gingery, 21 S. D. 183, 110 N. W. 774.

There it was alleged for a cause of action that a sale of 3,000 acres of South Dakota land was made at $16 per acre to a purchaser procured by plaintiffs pursuant to a contract with the owner by the terms of which he was to pay them a commission of $2 per acre provided the land was old at that price. It being established by the undisputed evidence that the only negotiations with reference to such land was an even exchange of the same for an Illinois farm, the value of which was not shown, a new trial was awarded by this court on the ground of a variance between the complaint and the evidence, and for the further reason that the jury was instructed as a matter of law that the transaction was a sale and not an exchange of property. Though controverted in some respects, the evidence introduced at the trial in this case was ample to justify the jury in finding that appellant contracted to pay respondent a commission of $2.50 for every acre of land that might be disposed of to Mr. Johnson, and it was clearly understood by both parties to the action that his financial condition was such that, in order to effect a sale of the land, the house and lot must be taken in part payment on any purchase price that might be agreed upon. Confessedly the negotiations between the appellant and this prospective buyer brought from Illinois by respondent resulted in a sale of one half section of land at $32.50 per acre, in partial consideration for which the Galesburg property was transferred and the balance secured by a mortgage on the premises purchased. After the commission agreement was made and Mr. Johnson had accompanied appellant to Plankinton, there was nothing further for respondent to do, and anything that was thereafter said by or in the presence of his agent, Mr. Hubbard, was wholly immaterial to any issue raised by the pleadings, and it was not erroneous to reject testimony with reference thereto.

No errors of law occurred at the trial, and the judgment appealed from is affirmed.